May I please support Catherine Tassinari, representing Lori Cochrane. Lori Cochrane is disabled by a combination of fibromyalgia, depression, low intelligence, and a long-standing personality disorder. She was able to function for many years despite her mental impairments, but with the development of fibromyalgia, she is no longer able to work as a house cleaner. She's made a prima facie case of disability in that she has proven she can no longer perform her past relevant work. So this case, the burden has shifted to the government at step five, and that is where we are. The first issue is really the issue of Dr. Morris' opinion and his diagnosis of fibromyalgia. As noted in my brief, of course, he gave a very favorable opinion about her condition, noting that he had found objective evidence of the condition. He found no functional overlay or exaggeration. He wrote, I think her symptoms are credible and her disability is real. The ALJ did not address that statement in his decision. For the first time at district court, the commissioner raised the issue, saying that he had reasons for rejecting Dr. Morris. Didn't Dr. Morris also say that in his view she could work part-time, or with some treatment she might be able to work part-time? He said eventually he thought she would. This is what he said. I think multidisciplinary treatment would render her employable at least part-time in a limited duty capacity sometime in the future. And he recommended a whole series of different kinds of treatment. There's a chart note where my client, who could be described as a doctor's worst nightmare, had a conversation with Dr. Herter's office, very upset, because her insurance wasn't able to cover the recommendations made by Dr. Morris. There are some obvious cheap ones, like controlling the amount of caffeine and trying to get exercise, but the physical therapy that he was recommending was not covered, and the biofeedback and various other things was not covered. And really in the record, she's had some medication treatment for fibromyalgia. But at least in the record, I think most of the other things that he was recommending never have been done. The district court felt that Dr. Morris's opinion was internally inconsistent for breaking the point that Judge Bull did about saying on one hand she's disabled and then on the other hand saying that she could get better with treatment. And I would submit that that's not inconsistent, that she's presently disabled. She may be able to get better with treatment, but there's been no showing in the record that she actually has gotten better. Well, in any event, the ALJ, as I read it, and I want to hear from Mr. Rodriguez on this also, of course, but it seemed to me that the ALJ just neglected to give any reasons for rejecting what Dr. Morris said. Am I right in that, that the ALJ mentioned Dr. Morris's opinion but expressed no reasons to discount it or qualify it? Yes, at 25, at the excerpt of the record, there's a discussion of Dr. Morris, but the ALJ also not only doesn't give reasons for rejecting Dr. Morris, but doesn't actually say the parts that I just read to you about what Dr. Morris said. He doesn't say that Dr. Morris said her symptoms were real or credible and that she couldn't work and that at best with treatment she could do some part-time. And that he found an objective basis for her fibromyalgia, which he set out. That's not in the ALJ's decision, which the commissioner concedes but says, but there are other places in the decision you might find a reason for rejecting Dr. Morris. Didn't Dr. Morris also say at 25 that she didn't know whether she could work or not? That was very inconsistent. He had two things. He had the letter he was writing to her treating doctor in which he said she was not employable. In the paper, in the instructions that he gave to Ms. Cochrane, he said, I don't know if you can work, but I think that you may be able to work. Well, he said, I know you can't work as a house cleaner, and that you may, with treatment, be able to work part-time. I, like many doctors, it's not a very therapeutic thing to tell her that she can't work. And the fact that he said a different thing to the treating doctor, I think quite arguably it's not inconsistent. And at any rate, it was the ALJ who needed to address Dr. Morris. We're not supposed to come up with after-the-fact rationalizations of what the ALJ might have done, as I understand the law. And should we consider independent findings made by the district court? But is the whole thing a – let's say, what's the point of the exercise if we send it back to the ALJ and tell the ALJ that he's got to explain whether he accepts Dr. Morris, or if not, why not? But it seems to me that that's really all we can do. On this record, I don't think we could award benefits under the Ninth Circuit standards for that. I think you could say that the reasons that were given by both the court and the commissioner for rejecting Dr. Morris are not clear and convincing reasons for rejecting this uncontradicted pain specialist. But I agree with you. The problem with raising these post-part rationalizations is like opening Pandora's box. The claimant was able to respond to this issue for the first time on reply in district court. That's just not a good way to do it. I'd also just want to point out there's objective evidence of mental impairment. Probably her most disabling limitation is her ability to reason abstractly. She's deficient in this area, and I suspect that has caused a lot of her problems in dealing with doctors and other people who are trying to explain things to her. Dr. Moulton didn't think she was borderline intelligence because there are only certain strands of intelligence that she was borderline in, but Dr. Turner did find that in certain areas she was borderline. How do you deal with what I might call a little bit of background or we might say the color of the case? I think the ALJ or maybe the district court or maybe both are affected by a feeling that the petitioner or the appellant, Cochran, is doctor shopping. Going from doctor to doctor trying to get something as supportive as possible. How does that factor in here? I think she is a difficult person to deal with and has had difficulty with relationships. So if she feels that someone's not supporting her, then she goes into this very hostile thing. If she thinks someone supports her life, like she had a good experience with Dr. Perry, for example, she's not hostile, but if she feels that you're not with her, she feels attacked and she flashes out. I was thinking of my lawyer friends and how they would approach a disability claim and if they would be content to have a doctor who didn't have an answer or if they would keep digging and trying to find an answer from their doctors, and I think most of them would. I don't think her actions are inconsistent with disability. Thank you. Thank you. And we'll hear from Mr. Rodriguez. Good morning, Your Honor. My name is Gordon Rodriguez with the Commission. A plaintiff in this case has failed to meet her burden of establishing disability. The ALJ found that Ms. Cochran's testimony as it pertained to her disability was not credible. There's no argument that she has a diagnosis of fibromyalgia. The question is, what level of pain is she experiencing? The judge found that based on her activities of daily living, such as feeding animals, supervising adolescent children, working on her computer at home, attending to her multiple doctor's appointments, and physical therapy, at least twice a week, dusting, doing home activities, as well as inconsistent statements that she made to medical providers, did not lend any credence to her allegations of disabled pain. You also noted that there may be a secondary gain element in her presentation, which was also noted by one of the doctors who refused to endorse her disability. As far as the ALJ's discrediting of the doctors, the case of Magdalena Steve-Bowen states that the ALJ need not recite magic words. He doesn't have to use magic words, like a particular phrase, but the ALJ under our precedent does have to give specific reasons for rejecting Dr. Morris' opinion. And as I read, maybe I'm missing something, but as I read the ALJ opinion, I don't see him giving any reasons for rejecting Morris, any express reasons whatsoever. Could you point me to any place in the ALJ's opinion, in the record where he's rejected what Dr. Morris said or given a reason for? No, I can't. Okay, so let's start with that. That the ALJ dropped the ball and did not give reasons, which maybe he had or maybe he didn't have. He could also have been busy and overworked something when he was putting his opinion together. So he didn't give reasons. Now the district court gives a bunch of reasons. Morris was equivocal or Morris was relying on her subjective statements, which were discredited by the ALJ. But really, those are somewhat speculative and they're after the fact. I don't even know under Chenery if we can consider that kind of after-the-fact rationalization. Wouldn't the fair thing here be to just send this back and tell the ALJ, you forgot to give any reasons for not accepting the testimony of Morris, if you intended not to accept it. So you've got to do that and reassess this. Well, the ALJ did not totally reject Dr. Morris's opinion. He accepted his diagnosis of fibromyalgia, but he did not include in what he did not discuss in his decision was Dr. Morris's opinion on disability, residual functional capacity, and employability. He didn't discuss Dr. Morris's opinion that her symptoms are credible. He didn't discuss Dr. Morris's opinion on some technical stuff that I don't know that I can repeat because I didn't understand it, but it had to do with, I guess, physical examination-type reasons why she would have pain, apart from subjective. Well, if you look at the record, Your Honors, you can see that during most of her examinations, they were perfectly within normal limits. She had full range of motion. There were no neurological deficits. The judge discussed all that evidence in his decision. He wasn't required to. Which judge? The ALJ. The ALJ, right. But where did he discuss Dr. Morris's statement that her symptoms are credible? Or where did he discuss Dr. Morris's statement that her pain would be caused by, I don't know, some kind of point. I don't even remember the phrase. But he used a phrase that had to do with what he found in his examination. He used medical terms that would give reasons for her pain. He doesn't discuss that she has a level of pain, Your Honor. The issue is, is it a disabling level of pain? Okay, well, Dr. Morris said it was. Dr. Morris said it was, but his own examination didn't verify that. He actually states, based on her history, I think she's disabled, based on my examination. Well, he gave opinions about her condition based on his examination, and then he says, I don't think she's employable at the present time. And he also talked about her symptoms being treatable, if not curable, and that that might lead to a functional state where she could work at least part-time. I mean, isn't this kind of quibbling about what did the ALJ really think about it, it seems to me a bit silly under our legal standards because we don't know what the ALJ thought about it. And why should we try to usurp that function? We're not a Social Security court. We're an appellate court. The ALJ, Your Honor, is not required to issue the best decision he can. He's required to issue a decision that's supported by substantial evidence. And the Commissioner's contention that the ALJ's decision in this case sets out legitimate reasons, proper findings for not accepting, first, the plaintiff's testimony, secondly, the doctor's opinions regarding disability. I'm not disagreeing with the reasons he gave to reject Dr. Lebeau or to an extent to reject Cochran's statements or lay witness's statements to some degree. I'm just having trouble that he didn't give any reasons to reject one of the treating physicians who's a pain specialist. It's the Commissioner's contention, Your Honor, that the decision as written would allow the court to draw inferences from the record that Dr. Morris's opinion is not supported. But wouldn't we have to draw an inference that the ALJ rejected it for these reasons? Well, if you've accepted that the reasons for rejecting Dr. Lebeau were adequate, Dr. Lebeau's opinions were essentially based upon part of Dr. Morris's findings. And in that way, you could make the connection that Dr. Morris's findings were discussed as well in the rejection of Dr. Lebeau's opinion. I have nothing further. Do you have any more questions? I don't. Judge Hall, do you have anything else? No, I'm good. Okay. Thank you. I believe you have only a few seconds for rebuttal if you want. Just to say that Dr. Moulton found no evidence of malingering. He was a medical expert. Dr. Perry administered three validity scales that were all normal. And Dr. Morris found that her reproducible trigger points, her taut myofascial bands, her positive tender points, and negative control points, and no functional overlay or intentional exaggeration accounts for her symptoms. That was the phrase I was trying to think about, about control points. Control points. What are control points? Well, there are tender points, so they press. And if those are sensitive, I think you need to get a certain number out of 18. But they also touch other parts of the body just to see if the person is complaining of pain everywhere. And hers were all negative. This is where he says, I found objective physical evidence of reproducible trigger points, taut myofascial bands, positive tender points, and negative control points. So those are physical things, right? Right. They're not based on her subjective statements. Those are objective. And there is another sheet. He filled out a form, and the question from the agency was, did you base your opinion on subjective factors or objective factors or both? And he circled both. And then he wrote down these as the objective ones in a separate form. Thank you, counsel. The case just argued is submitted.
judges: Hall, Graber, Gould